UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED VAN LINES, LLC, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-04-00260 |
| § | |
| STEVEN MARKS and § | |
| JOANMARIE MARKS, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff United Van Lines, LLC's Motion for Summary Judgment (Docket # 63). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

This case arises from alleged loss and damage to household goods owned by Defendants Steven and Joanmarie Marks ("Marks"), and transported by Plaintiff United Van Lines, LLC ("United"). In August 2002, the Marks hired Third Party Defendant Import-Export International, Inc. ("IEI") to pack and move their personal goods from their home in Mexico to San Diego, California, and to store the goods for their ultimate transport to Texas.[1] Richard Mikhail ("Mikhail") of IEI served as the Marks' agent in arranging and overseeing their move. Through Mikhail, the Marks selected United to serve as the interstate carrier that would transport their goods from California to Texas.

IEI employees packed and transported the first shipment of the Marks' goods across the Mexican/American border to IEI's San Diego warehouse in late August and early September 2002. In April 2003, Mikhail contracted with Sullivan Moving & Storage Company ("Sullivan")

---

[1] The Court entered default judgment against Import-Export International, Inc. on October 31, 2005.

for Sullivan to pick up the first shipment of goods from IEI's warehouse and deliver them to Sullivan's warehouse. On April 22, 2003, Sullivan picked up and inspected the first shipment of goods, which were identified by number with green "United" tags. Sullivan's inventory forms bore the name "Sullivan United" and included Sullivan's "United" agency number. Sullivan's inventory noted that there was crush damage to several boxes, and that several boxes had previously been opened. Sullivan's inspection did not note any water damage or damage to the contents of the boxes, except for a damaged "Direct T.V." dish. Williams Decl. ¶ 4.

Because IEI did not have a sufficient number of workers to complete the packing, Mikhail arranged with Sullivan to hire Preferred Moving, the independent contractors that are used by Sullivan, to pack the Marks' remaining goods. In May 2003, Preferred Moving employees packed the second shipment of goods, labeling the boxes with orange "United" tags and using boxes and inventory sheets with the "United" logo. The Preferred Moving packers also wore uniforms with a "Sullivan/United" logo. IEI transported this second shipment of goods across the border from Mexico to IEI's warehouse in San Diego. Of the two shipments of boxes that were crossed over the border, Customs tagged twenty to thirty of the boxes as having been opened, inspected, and re-taped by customs officials. Shelton Aff. ¶ 5.

On May 30, 2003, the Marks' goods were tendered to United for their interstate shipment from California to Texas. United issued a bill of lading naming Steven Marks as the shipper, Sullivan as the booking and originating agent, and Suddath Relocation Systems, Inc. ("Suddath") as the destination agent. United's driver picked up the first shipment of goods at Sullivan's warehouse, and after a visual inspection, he determined that the boxes were crushed and in "sad shape." Edwards Dep. at 34, July 1, 2005. He did not note any missing boxes or sign the household goods inventory. *Id.* at 41. On the same day, United's driver picked up the second

shipment of goods at IEI's warehouse and made no notes about the condition of the boxes or of any missing boxes. The driver then transported both shipments of the Marks' goods from California to Texas. On June 7, 2003, United's driver delivered the goods to the Suddath warehouse in Houston, Texas, where he saw that the boxes were in the same condition as when he had picked them up, except for "some settling." Edwards Dep. at 57. The goods remained in storage-in-transit at Suddath's warehouse from June 7 through July 7, 2003, when Suddath delivered the goods to the Marks' home in Spring, Texas. When their goods were delivered, the Marks noticed that many of the boxes of their goods were damaged or missing. In July through September 2003, the Marks notified Sullivan and United of the damage and demanded compensation for the damage and loss of their goods.

United subsequently filed this action seeking a declaratory judgment concerning the rights and liabilities of United and the Marks. United contends that it has no liability for loss or damage to the Marks' goods because the Marks cannot prove that their goods were delivered to United in good condition, and because the goods were improperly packed before tender to United. United also asserts that while Sullivan acted as United's disclosed household goods agent in booking the interstate shipment of the Marks' goods from California to Texas, Sullivan acted under its own authority and in its own capacity when it picked up the Marks' goods from the IEI warehouse and moved the goods into storage at Sullivan's warehouse. Finally, United argues that the Marks' third through sixth sets of claim forms fail to provide a specific, determinable amount for each item claimed, and are therefore barred as a matter of law.

Conversely, the Marks argue that Sullivan acted as United's agent at all times in its dealings with them, and that they have shown that their goods were in good condition when delivered to Sullivan and United. The Marks also contend that they provided United with proper

3

and complete claim forms for a specific and determinable amount. The Court held a hearing on United's Motion for Summary Judgment. Because the Court concludes that the Marks have not produced evidence to support their claims against United, it need not determine the adequacy of the Marks' claim forms.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If United shows that there is a lack of evidence to support the Marks' claims against it, the Marks "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation omitted). The Marks cannot satisfy this burden with

4

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

**B. Defendants' Carmack Amendment Claim**

Because United's shipment of the Marks' goods from California to Texas was an interstate shipment, United's alleged liability for damage to the shipment is determined by federal law. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003); *Missouri Pac. RR. v. H. Rouw Co.*, 258 F.2d 445, 446 (5th Cir. 1958). Specifically, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, provides "the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Hoskins*, 343 F.3d at 778. The Marks do not contest that their claims against United arise under the Carmack Amendment. *See* Defendants' Response to Plaintiff's Motion for Summary Judgment at 3, 12.

A shipper seeking damages from a carrier for injury to a shipment makes out a *prima facie* case under the Carmack Amendment by showing (1) that the goods were delivered to the carrier in good condition; (2) that the goods were delivered by the carrier back to the shipper in damaged condition, or not at all; and (3) the amount of damages. *Missouri Rac. RR. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964); *Hoskins*, 343 F.3d at 778. Here, United argues that the Marks' evidence does not and cannot establish that their goods were delivered to United in good condition, and that therefore, the Marks cannot establish a *prima facie* claim against United.

The bill of lading produced by United for the interstate shipment of Defendants' goods states that the shipment "was received in apparent good condition." Defs.' Ex. 17. The Fifth Circuit has found that such a bill of lading is *prima facie* evidence of tender in good condition for only those portions of a shipment which are visible and open to inspection. *Accura Sys. Inc. v.*

*Watkins Motor Lines, Inc.*, 98 F.3d 874, 878 (5th Cir. 1996); *Spartus Corp. v. S/S Yafo*, 590 F.2d 1310, 1319 (5th Cir. 1979). When goods are not visible or open for inspection upon tender, the bill of lading is not sufficient proof of delivery in good condition. In such case, the shipper must present other "adequate proof" of delivery in good condition, or proof "by a preponderance of the evidence." *Accura Sys. Inc.*, 98 F.3d at 878 (citing *Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co.*, 613 F.2d 1344, 1347 (5th Cir. 1980); *Spartus Corp.*, 590 F.2d at 1319). Circumstantial evidence that is substantial and reliable may be used to show delivery in good condition. *Accura Sys. Inc.*, 98 F.3d at 878 (citation omitted). In the instant case, the majority of the Marks' goods were in sealed boxes that were not visible or open to inspection by United. Therefore, the Marks must produce other substantial and reliable proof that their boxes were tendered to United in good condition.

### 1. Tender of Goods to United

Steven Marks has testified that he was present during IEI's packing of the first shipment of goods and witnessed no damage to the goods. Steven Marks Dep. at 27, Sept. 27, 2004. Mr. Marks later saw the first shipment at the IEI warehouse in San Diego, and the boxes were in the same condition as the day the cartons were moved from the Marks' home in Mexico. *Id.* Mr. Marks was present during the packing of the second shipment of goods, as well, and has testified that there was no damage to the goods when they left the Marks' home to be delivered to the IEI warehouse. *Id.* at 32, 34-35. The Marks have also obtained testimony from Christine Russell, a Preferred Moving packer who assisted in the packing of the second shipment. Ms. Russell testified that the goods were properly packed, and that none of the goods was broken. Russell Dep. at 15, 21, Aug. 16, 2005. Additionally, the Marks point to Mikhail's testimony that when Sullivan picked up the first shipment of goods from IEI's warehouse in San Diego, only ten

boxes had been damaged, the majority of which contained linens and books that had sustained no damage. Mikhail Dep. at 29-33, Oct. 19, 2004. Finally, the Marks point out that United's driver failed to record any missing cartons from either the first or second shipment and did not note damage to either shipment beyond what was already written on the descriptive inventories.

This evidence is not sufficient to prove tender of the Marks' goods to United in good condition. Rather, the evidence demonstrates that the goods changed hands many times, and the Marks have not presented any evidence that their goods remained in good condition until the time they were tendered to United. The Marks' first and second shipments of goods were packed by IEI and Preferred Movers, respectively, at which time the goods left the Marks' custody and control. IEI then took both shipments across the Mexican/American border and through Customs, which opened, examined, and re-taped several of the boxes. Thereafter, IEI stored both shipments of the Marks' goods in its San Diego warehouse for a period of time, and Sullivan also picked up and stored the first shipment in its warehouse. Sullivan noted that boxes in the first shipment had been crushed and opened. This all occurred prior to the tender of the goods to United for shipment to Texas. At the time the goods were tendered to United, United's driver also saw that boxes of the Marks' goods had been crushed.

Viewing the evidence in the light most favorable to the Marks, the Court assumes that the first shipment of boxes was in good condition when Mr. Marks saw it in IEI's warehouse, as he testified. This does not prove, however, that the boxes were still in good condition when Sullivan picked them up from IEI's warehouse, or that they were in good condition when United's driver picked them up from Sullivan. Similarly, Mikhail's testimony that only ten boxes were damaged when Sullivan picked up the first shipment does not prove that the shipment was otherwise in good condition when it was later tendered to United. The Court will

also assume from Ms. Russell's testimony that the Preferred Moving packers properly packed the second shipment of boxes. This also does not prove, however, that these boxes were in good condition when they reached IEI's warehouse, or that they were in good condition when United's driver picked them up from IEI. United's driver testified that United did not require him to note missing or damaged cartons when he picked the shipments. Edwards Dep. at 41. His failure to record missing boxes or damage to the boxes beyond what had already been noted does not prove that the goods were tendered to United in good condition. Moreover, the Marks have conceded that they do not know when their goods were damaged or lost or who caused the damage or loss to their goods. Steven Marks Dep. at 124-125; Joanmarie Marks Dep. at 47, Sept. 27, 2004. The Marks have not shown by adequate proof or by a preponderance of the evidence that their goods were tendered to United in good condition, or that the goods that have been lost were ever tendered to United.

*2. Sullivan as United's Agent*

Additionally, the Marks contend that Sullivan acted as United's agent at all times in its dealings with them, and that United is therefore liable for any damage Sullivan caused to the Marks' goods. The Marks thereby seek to hold United liable for damage caused prior the tender of their goods to United, which might include damage caused when Sullivan picked up and stored the first shipment of the Marks' goods in its warehouse. Conversely, United argues that Sullivan played two separate and unrelated roles in the process of the Marks' move: first, when it picked up and stored the first shipment of the Marks' goods, which was done under its individual, intrastate authority, and second, when it acted as United's disclosed household goods agent in booking the interstate shipment of the Marks' goods from California to Texas. Both parties filed supplemental responses with the Court on the issue of agency.

In order to show that Sullivan acted with apparent authority as United's agent, the Marks must demonstrate that United either affirmatively held Sullivan out as having authority to act on its behalf, knowingly permitted Sullivan to hold itself out as having this authority, or acted with such a lack of ordinary care as to clothe Sullivan with the indicia of authority. The Fifth Circuit has emphasized that "[i]t is the manifestations of the alleged principal and agent as between themselves that is decisive and not the appearances to a third party or what that third party should have known." *Esso Int'l, Inc. v. SS Captain John*, 443 F.2d 1114, 1148 (5th Cir. 1971). An agency relationship may be shown through the agent's course of conduct, but only to the extent that the principal knew of and consented to the conduct. *Id.*; *Crowe v. Hertz Corp.*, 382 F.2d 681, 688 (5th Cir. 1967).

In their response to United's Motion for Summary Judgment, the Marks point to evidence showing that when Sullivan picked up the first shipment of goods from IEI's warehouse, Sullivan used inventory forms bearing the name "Sullivan United" and United's logo. These inventory forms also identified Sullivan's "United" agency number. Likewise, the Marks have demonstrated that the Preferred Moving packers, who Mikhail contacted through Sullivan, used packing materials, forms, and labels identified with the "United" logo and wore uniforms with a "Sullivan/United" logo. A Sullivan representative testified that Sullivan includes the "United" logo on its forms for marketing purposes, to let people know that Sullivan is an agent of United. Keiper Dep. at 68, July 20, 2005.

While the Court agrees that Sullivan's use of United's logo might make it difficult for a consumer to distinguish when Sullivan is and is not acting as United's agent, consumer confusion is not sufficient to prove apparent agency. Rather, the Marks must show that United knew of and permitted Sullivan to hold itself out as United's agent. Evidence of Sullivan's

conduct and use of United's logo alone does not demonstrate United's knowledge of or acquiescence in this conduct.

In their supplemental response, the Marks point to United's admission that federal regulations require all of Sullivan's documents to bear United's name, regardless of whether they are interstate or intrastate documents. *See* 49 C.F.R. § 375.207. The Marks argue that this admission indicates that United knowingly held Sullivan out as its agent. The Court disagrees. United's knowledge of federal regulations requiring Sullivan to include its name on all of its documents is not sufficient to demonstrate apparent agency. First, United's admission does not demonstrate its knowledge that Sullivan used United's name on anything except the documents. It does not demonstrate that United was aware of Sullivan's use of boxes, labels, or uniforms with the "United" logo. Furthermore, Sullivan's compliance with the federal regulation requiring its use of United's name is not, by itself, a representation that Sullivan acted as United's agent in all of its activities. Thus, United's knowledge of Sullivan's compliance with the regulation does not equate to knowledge of, or acquiescence in, any representation that Sullivan acted at all times as United's agent.

The remainder of the Marks' supplemental response points to evidence that Mikhail understood Sullivan to be acting as United's agent throughout the entire move, that Sullivan and United required a release from the Marks for Sullivan to take the goods out of its local authority, and that a Sullivan representative asked United to permit Sullivan to review any settlement that United entered into with IEI before releasing information to the Marks. None of this evidence demonstrates that United knew or should have known that Sullivan represented to the Marks that it was acting as United's agent as to any service other than its booking of the interstate shipment of the Marks' goods.

The Marks have not produced evidence showing that their goods were tendered to United in good condition. Because the Marks cannot prove this element of their *prima facie* case under the Carmack Amendment, United is entitled to summary judgment against the Marks.

## III. CONCLUSION

Plaintiff's Motion for Summary Judgment is **GRANTED**, and **JUDGMENT IS ENTERED** for Plaintiff.

**IT IS SO ORDERED**.

**SIGNED** on this 7th day of December, 2005.

*[signature]*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**